HOLDEN ET AL., TRUSTEES, APPELLANTS, *v.* SHUTT ET AL., APPELLEES.

(Decided November 29, 1939.)

*Mr. Wm. D. Held* and *Mr. Gillum H. Doolittle,* for appellants.

*Mr. C. T. Pflueger, Jr.,* for appellees.

DOYLE, J. This is an appeal on questions of law from the Court of Common Pleas of Summit county. It is urged that the trial court erred, to the prejudice of the appellants, in confirming a sheriff's sale of real estate following a decree of foreclosure.

Action was commenced in the Court of Common Pleas on December 20, 1934, by the appellants for personal judgment on a promissory note, and for the foreclosure of a real estate mortgage securing the same. On December 21, 1934, judgment was awarded appellants on the note; on June 14, 1935, a decree of foreclosure was entered and an order of sale issued; and on August 23, 1935, the premises were offered for sale by the sheriff and were "bid in" by the appellants.

Thereafter, on November 27, 1935, the appellants wrote Nettie B. Shutt, the owner of the property and a defendant in the foreclosure action, by registered mail, the following: "This is to notify you that on Monday morning, December 2, 1935, at 11:30 a. m., we will apply to the Hon. Frank H. Harvey, at his court room, or to such other judge of the Common Pleas Court to whom said hearings may be assigned, for authority to proceed with the above foreclosure. If you have any defense, please be present, in order that you may be heard."

Pursuant to this letter, a hearing was held before one of the judges of the Court of Common Pleas. A fair inference to be drawn from the record is that, in such hearing, the appellants orally moved the court to confirm the sale of the premises, and that the owner of the premises ásked for a continuance of the proceedings, and that she be granted the immunities of Section 11588, General Code, known as the Best Mortgage Moratorium Act.

The court, following this hearing, continued the case "until the further order of the court," on condition that certain payments be made to the appellants. It is apparent that the court was of the opinion that the owner was entitled to the benefits of the provisions of the mortgage moratorium act and proceeded accordingly.

The original pleadings and the transcript of journal entries disclose no further action until October 6, 1938, at which time the plaintiffs (appellants) moved the court for an order directing "that the order of sale formerly issued * * * be set aside; that the sale of the premises * * * be set aside; and that the sheriff be ordered to return the order of sale," for the reason that the property had been permitted by the defendants (appellees), who had been in possession, to "run down and deteriorate," and further that, due to the condition of the real estate market, the property was no longer worth the amount for which it had been sold more than three years before.

Following a hearing on this motion, the court overruled the same and stated in the journal entry that it was overruled "without prejudice to the right of the plaintiffs to renew their motion at any time when said Best act may have expired or become inoperative as to said property."

It appears that, during the pendency of the foregoing proceedings, Nettie B. Shutt, the owner of the premises, deceased, and that the court made John Shutt and Hazel Ehring, executors of the estate of the deceased, parties to the action.

On November 3, 1938, the aforenamed executors filed a motion in the court, asking for an order of confirmation of the sheriff's sale made in 1935. This motion was apparently heard and reheard, and on January 4, 1939, the court ordered on its journal that the motion be overruled.

On March 20, 1939, the plaintiffs again filed a mo-

tion for an order setting aside the sheriff's sale and that the "sheriff be ordered to return the order of sale." It was asserted that the premises had decreased in value from the time of sale, and that the payments made were not enough to pay the current interest and taxes; and further, that the defendants had entirely stopped payments of any amount.

On May 13, 1939, the court, in passing upon plaintiffs' motion of March 20, 1939, *supra,* and a motion of the defendant executors for a confirmation of the sale, overruled the plaintiffs' motion to set aside the sale, and sustained the motion of the defendant executors to confirm the sale, and ordered its confirmation.

From that order, appeal has been perfected to this court on questions of law.

Evidence was introduced by the plaintiffs in the trial court in opposition to the defendant executors' motion to confirm the sale. It is in all respects uncontradicted. In substance it discloses that the plaintiffs were the only bidders at the sale, and stood ready and willing to complete their purchase of the property and pay the amount bid for it, "but were prevented from so doing by the interposition of the defendant Nettie B. Shutt, who was the owner of the equity of redemption" in the property; that the said plaintiffs attempted unsuccessfully to secure a confirmation of the sale; that at the date of the sale the property was reasonably worth two-thirds of its appraised value, to wit, $4,235 (which amount was the plaintiffs' bid), but, due to lack of repair, deterioration, and wear and tear, while in the possession of the defendants, and also to a change in the real estate market, the property is not now worth "more than $3,000 to $3,500"; that Nettie B. Shutt, the owner, was never entitled to the benefits of the moratorium act, even if the application had been seasonably made, for the reason that she was not in distressed circumstances, as evidenced by the extent of her estate in the probate thereof, wherein it is re-

corded that she died possessed of property valued at $16,517.68; that at the time the property was bid in, the general real estate market condition made the purchase a desirable one, but that between August, 1935, and December, 1938, the real estate market had fallen to such an extent that the property would be extremely undesirable at the present time; and further that it is probably entirely unsalable in its present condition, and would require the expenditure of a large sum of money to repair it for the market.

It is further disclosed that the defendants have deposited, with the court, money sufficient to satisfy the deficiency judgment, and that the payments as ordered by the court in 1935 were regularly made by the defendants to the plaintiffs throughout most of the term, and that they were in an amount slightly less than the sum necessary for the payment of interest and taxes.

Section 11588, General Code, effective February 4, 1935, provided:

"When a mortgage is foreclosed or a specific lien enforced, a sale of the property shall be ordered. However, any court before which a proceeding for the foreclosure of a mortgage or the enforcement of a specific lien or execution against real property is had, on or before the first day of April, 1937, may after a full hearing, and upon such terms and conditions as may be fixed by the court, order that the sale be postponed and that proceedings to enforce the debt or to recover possession be restrained until such a time, not later than the first day of April, 1937, as the court may, in the exercise of its discretion believe to be just and equitable, considering the rights and equities of all parties affected by such order in the light of existing economic conditions but in no event to postpone said sale and/or such proceedings unless the current taxes and the interest due from and after the date of said postponement by said court order shall be paid as due, provided, no sale shall be postponed and no such pro-

ceedings had upon a mortgage executed after May 18, 1933.

"In the event of default as to any of the terms and conditions fixed by the court in postponing a sale under the provisions of this act, and upon application of the lienholder, his heirs, successors, or assigns, the court may set aside the said order of postponement and injunction and order the sale to proceed. * * *"

Under the provisions of this act, the Court of Common Pleas was clearly in error when it refused to confirm the sale in 1935. The code provision did not authorize the bestowal of the immunities therein provided upon this mortgagor, after the foreclosure sale.

"1. A foreclosure sale of mortgaged premises is consummated when the property is duly advertised, offered at public auction, and bid in by a seemingly qualified bidder. After that a court has no authority under Section 11588, General Code, to issue an order staying foreclosure proceedings." *State, ex rel. Squire, Supt.,* v. *Pospisil,* 58 Ohio App., 233, 16 N. E. (2d), 543.

And in the opinion, at page 240, it was stated that:

"After such sale, no unbounded discretion rests with the trial court to confirm the sale or refuse to confirm. His discretion is limited to an inquiry of whether the sale was made in all respects in conformity to law, and if it be found to thus conform, it becomes the duty of the court to confirm."

In the instant case it was the duty of the trial court, under the circumstances, to have confirmed the sale, within a reasonable time after the bid was accepted. And the *quaere* presented is whether, three years and more later, the court, in the exercise of its discretion, can compel the bidder to take the premises over his objection. The Court of Common Pleas compelled the plaintiffs to thus perform.

We are of the opinion that, where a judgment of foreclosure is entered in a case brought by the mort-

gagee against the mortgagor, the court determines the rights of the mortgagor and mortgagee in reference to the subject of the action; and when, in said action, the court orders the sheriff to advertise and sell the mortgaged premises, and the sheriff, in pursuance of the order, complies in all respects with the order of the court and the statutory law, and reports to the court that he has sold the premises to a purchaser, such purchaser thereby becomes a party to the foreclosure action and is charged with obligations and vested with rights as purchaser; and if the purchaser is the mortgagee, he is then before the court in two capacities, one having the rights of a mortgagee, and the other the rights of a purchaser.

The right of such person as purchaser, if the court finds that the sale is in all respects regular, is to have the sale confirmed; and if he seasonably appears before the court, the mortgagor and the mortgagee having notice and being present, and applies to the court, orally or by writing, for a confirmation of the sale, and the mortgagor opposes the application and obtains from the court an order in reference to the respective rights of the mortgagor and the mortgagee by which the mortgagor is permitted to remain in possession of the premises, paying to the mortgagee monthly a sum substantially equal to the interest on the obligation of the mortgagor to the mortgagee, and the taxes on the property, but no specific order is made in reference to the rights of the purchaser, and the order as to the respective rights of the mortgagee and the mortgagor is such as to prevent a confirmation of the sale, such purchaser has a right to appeal from such order, or to treat the same, so far as he is concerned, as a setting aside of the sale and a relieving of him from all obligations in reference thereto; and if the purchaser is also the mortgagee, he may receive, as mortgagee, the benefits of the order without in any way affecting his rights as such purchaser; and if the

situation thus brought about at the request of the mortgagor continues, as it did in this case, for a period of almost four years, during which time the premises materially depreciate in value, and the personal representatives of the mortgagor apply to the court for a confirmation of the sale, the order of the court confirming the sale at such time and under such circumstances, against the objection of the purchaser, is an abuse of discretion, and upon review should be reversed.

The order of confirmation is therefore reversed and set aside, and the cause is remanded to the Court of Common Pleas, with directions to enter an order setting aside the sale.

*Order reversed and cause remanded.*

WASHBURN, P. J., and STEVENS, J., concur.

WASHBURN, P. J., concurring. I fully agree not only with the conclusion reached herein, but also with the reasons set forth for such conclusion; but speaking for myself alone, I desire to give as a further reason for reaching said conclusion the following:

So far as the purchaser at a sheriff's sale is concerned, the sheriff is acting as the agent of the court, and the transaction between the purchaser and the sheriff is not complete and binding upon the purchaser until the court, acting as principal of the sheriff, approves of and confirms the transaction between the sheriff and the purchaser.

Where the court directs the sheriff, as its agent, to sell real estate and report his execution of the order, and the sheriff does so and acts in all respects in compliance with the order, and the other party to said transaction, the purchaser, applies to the court for an approval of the acts of its agent and a completion of the transaction, and the court, wrongfully and without

any authority to do so, refuses the request of the purchaser, and the purchaser, at a later time, renews his request, and it is again refused, and thereafter the purchaser applies to the court for a formal release from the transaction with the sheriff as the agent of the court, and the court refuses said request and confirms the transaction between its agent and the purchaser, when, between the time of such transaction and such confirmation a period of three years has elapsed and there has been such a depreciation in value of the property which was the subject of the transaction as to render it inequitable and unjust to hold the purchaser bound by such transaction, such court's action is an abuse of discretion, regardless of whether the court, as between the mortgagor and the mortgagee, was authorized in postponing the completion of the transaction between the purchaser and the sheriff.

It is the duty of a judge to require litigants to do equity; he should also do equity himself under the circumstances disclosed by this record; and in this case, when the court had full authority to exercise its discretion in favor of the purchaser, it was its duty to have done so.